So the first case that we're going to call is 5-150084 Jasper Oil Producers, Inc. v. Dupo Oilfield Development, Inc. Do I have the... Okay. Gilsdorf? Did I pronounce that correctly? Yes. Okay. When you're ready, you may begin. Thank you. Good afternoon, Justices, Counsel, Members of the Court. Again, my name is Jess Gilsdorf. I'm from Mount Sterling, Illinois, representing Jasper Oil. Okay. Would you speak up just a little bit because the microphone does not amplify. Certainly. And I apologize. They changed my blood pressure medicine yesterday, so I'm a little bit disjointed here in terms of speaking, so I apologize if I'm speaking too softly. Don't apologize. We understand. At this juncture, just to be clear, we stand on all points that we raised in the briefs, but basically we just wanted to highlight a few of the following issues. First, I think foremost and most important for this case is that there was a check, and it's attached as Exhibit C to the complaint, the Second Amendment complaint, which was signed and endorsed, negotiated by Ray Cole as the president of Dupo. He negotiated that check. It was from Jasper Oil in the amount of $25,000. The memo on that check clearly shows that it was for a 30-second interest in certain real estate described in the Dupo oil field in St. Clair County. That check was, in fact, signed, endorsed by Mr. Cole. He converted that into a $25,000 cashier's check at the bank in Mount Sterling. And I think it's clear that that is a right. And it was signed by Mr. Cole as president of Dupo. And when we look at the actual requirements of 740 ILCS 80-2, commonly referred to as a statute of frauds, all that's required, either a contract in writing or some memorandum or note thereof. That's all that's required. When we look further, 740 ILCS 80-3 also clearly states that the consideration of any such promise or agreement need not be set forth or expressed in the writing, but may be proved or disproved by parole or other legal evidence. So you don't have to have a contract in writing. What you have to have is some note or memorandum. Oddly enough, it's strange to say that the check, which clearly shows the consideration of $25,000, the memo line obviously actually says it's a memo. So I think it's clear that there is a memo there. It's clearly a right. So with regards to the argument that somehow the statute of frauds bars this matter, I think that it's clear that it does not. I would also note that, strangely enough, there was no affidavit attached to the 619 motion. An individual can admit a contract existed even outside of the statute of frauds and they, in essence, waive it. With the 619 motion not having an affidavit attached to it saying, hey, there was no contract, I think, again, the court has to take those pleadings as true for purposes of dealing with this motion. And at that juncture, I think that the statute of frauds, if it is going to be interposed as a defense, is a little bit too early in the absence of an affidavit denying a contract. But that's not inherent there because I think that there is, in fact, in writing. Again, it's clear that there was consideration, which is not required. The other issues that really are relevant to this matter is what is the relevant statute of limitations? And again, there was no affidavit attached to the 619 motion, so the court here is basically doing a de novo review of the complaint to determine and to ascertain what is the date of the breach of the contract. The date of the breach, according to Mr. Shields, who was the president of Jasper Oil, that paragraph 20 of the complaint had been in March of 2011. The complaint was filed on 3-12 of 2014. Now, in order to uphold the dismissal based on the statute of limitations, the breach would have had to have occurred on or before 3-12 of 2009. And you would have to be able to read the complaint and ascertain that from reading the complaint. And I don't believe that's what the complaint says. The complaint actually says that in March of 2011 is when the breach was actually definitely communicated to Mr. Shields. Now, he knew he'd paid for this interest, and it had not been assigned to him, and he knew that from the date he wrote the check. Well, while that may be true, the nature of this prospect was that the Duke Oil field, particularly this particular section of arson interest, was being acquired. And once that was going to be acquired, it was going to subsequently be transferred. It wasn't intended to be a simultaneous exchange of deeds for the $25,000. It wasn't a closing in that regard. It was putting together a, basically, a proposition, a proposal, whereby the $25,000 was going to be, in fact, used as property money to acquire the Duke Oil field. So, no, it would not be a deed at that time, nor could it be. When was it acquired? It was acquired by Mr. Coleman. I was thinking it was just a few months after the check. A few months after the check, yes. And that acquisition was recorded of record. It was. Yes, it was. There's no doubt about that. But, again, having acquired it is not the same thing as being in breach of it automatically. The individual would have time to, in fact, tender over the deed. And Mr. Shields did inquire of it. Mr. Coleman said, it is for accounting. And he said that he heard the complaint numerous times until finally, in 2011, he said he just basically wouldn't even respond at that juncture in 2011. What about the August 19, 2009 letter where he's writing wanting to know about his interest and they're basically saying you're not of record here? Right. Isn't that notice? Isn't that notice? It may be a notice that he's not of record, but that is not the same thing. Being of no record with Countrymark, the oil refinery, and the independent buyer is not the same thing as being of being unnoticed that there's a problem. But, again, being unnoticed doesn't mean that he's unnoticed of a breach. Perhaps it means that he's unnoticed of something else that he needs to follow up on and determine if there's a breach. And he did follow up on that with Mr. Cole, who constantly, again, assured him that, in fact, compliance was forthcoming. Was there a, at the time the check was transferred to DuPo Oilfield, do you believe that there existed any kind of fiduciary relationship between the two gentlemen or the companies? Between the two companies? I think, at a certain level, there probably is a fiduciary relationship between the two companies. In fact, when he was taken for the purpose at that juncture, Mr. Cole was holding it. I think you could argue that there's a fiduciary relationship there at that juncture. He's holding it to acquire this property for the benefit of Mr. Shields or Jasper Oilfield, if you will forgive me. I use them interchangeably. But when he does acquire the property, I think he is holding it in a fiduciary capacity at that juncture. Because one of the things I noticed about the complaint is that it continuously makes reference to the fact that your client would ask the question and Mr. Shields would say, don't worry, you're going to be on the paper, or he'd come up with some excuse, which seemed to be somewhat fraudulent in nature. Well, I think there's a very good argument that it's fraudulent in nature, especially when an individual takes money and then basically does nothing with it. I think somebody could plead out an action for fraud in that regard as well. The difficulty, though, is that you have to show that he intended to breach this basically up front. And in a contract claim, that's all of them possible to do. Somebody will just argue, no, this is not a fraud case. It's a breach of contract, and that's the way it should be pledged. But I think that having taken the money and having made promises to transfer the property, one could argue that there is a fiduciary relationship with regards to that property. The property is basically, in essence, held, that 132nd being held basically in trust for Jasper Oil. What's the effect of that, though, if that exists? Is there any tolling of the statute of limitations? I believe that there would be a tolling because I think that to the extent that an individual can reasonably rely upon statements made to him, I think that that does, in fact, toll the statute of limitations because it goes to what is the level of reasonableness of Mr. Shields. I think that one could argue, and I think that it's been kind of touched here to some extent, that by 2011, one might not be reasonable anymore in believing Mr. Cole's statements. Even if on the day in March of 2011, if Mr. Cole said, hey, I'm still going to get you this paperwork, one might reasonably conclude that maybe that wasn't going to be forthcoming two or three years after the fact. But at the point in time that this would have to be occurring or violating, we're still approximately, well, we're not even six months out at the juncture that this would violate the statute of limitations. Again, this would have had to have been filed, excuse me, the breach would have had to have occurred prior to March 12th of 2009 in order for this to be time-barred. And I think it's reasonable to conclude during that relatively brief period of time. It may have taken a few months just to get the title of the paperwork, as Justice points out. But again, a few months there when somebody is telling you, well, the promise is forthcoming, I think it's clear that a person may still be reasonable to reliance on that. The other thing, again, this is just very roughly, very briefly touched on. I don't believe that Durbin v. Carrick Oil is actually applicable to this case when one really looks at that. Number one, I think we do have a right which takes it on the statute of frauds to begin with. Number two, I think some of what we saw in Durbin, and this touches on what the court just inquired about with regards to fraud a moment ago. It would be a fraud to allow someone to impose the statute of frauds in this particular instance. And it's kind of a strange thing. But here Mr. DuPont Oil and Mr. Cole took this $25,000. And in essence, this is an oil field invention. If the oil field invention goes badly, okay, Jasper Oil is out of their money. If it goes well, all of a sudden you see somebody saying, okay, there's no right in there. This allows somebody basically the benefit of having things both ways. If there's a loss, it's on Mr. Shields. If there's a win, the loss is still on Mr. Shields. I think that in terms of being an equitable fraud, that probably is very close to being that. Additionally, when we start looking for a decadent remedy of the law, I think number one, we're dealing with real estate. I think that when we start looking at the price, and I think the court can take notice of the price of oil in the last few months. In the last year, I believe it's ranged from $40 to $110. No one knows how much oil is going to become underground. Nobody knows how long that field is going to last. Even attached to the pleadings, we show run tickets in oil production going back into the 1990s, various amounts of oil being produced, sometimes 70 barrels, sometimes 140 barrels, 150 barrels, this going back and on for quite some period of time. This is different than what we had in the Durbin case, because in the Durbin case, the oil that was actually being produced in that case was owned by a third party. It was still going to be owned by a third party. No matter what they did with that lease, the oil was owned by somebody else. The land itself was being possessed by somebody else. But even when we look at that case, that case is very much all over the map. And I think what it really boils down to in that case is you had a deed that was written, very badly written deed in the first place, no legal description, no seal, so on and so forth, and the Supreme Court, it did, in fact, hold that the deed was, in fact, fraudulent as they held in that case. The individual, the rule is that the individual loses on all counts anyway. So anything else they said beyond that, I think, would in essence be largely dicta. But since they covered so many areas, that's something I did want to point out, that I think it is sufficiently different from what we see in the factual basis of current versus urban oil. All in all, I think that it's clear that the pleadings do not establish that this complaint was, in fact, time barred. I think that's really the issue for the day. And as such, I would respectfully request the Court reverse the trial court's decision and remand Ms. Bennett for further proceedings. Thank you. Mr. Sullivan? Please, the Court, Counsel, good afternoon. My name is Chad Sullivan. I'm an attorney for DuPont Oilfield, the appellee in this matter. I think my comments can be fairly brief because there is a lot of agreement in this matter, both on the facts. And when I touch on the facts here a little bit, every fact I bring up today is directly from plaintiff's second admitting complaint. So there is no issue as to the facts. There's really two issues that we're here today on, one being does the statute of limitations bar both of plaintiff's claims as the trial court rule, and two, whether Jasper Oil has stated a claim for specific performance of an oral contract. To clear up one point from counsel's argument about statute of frauds, we have not argued that these claims are barred by the statute of frauds. So we have not argued that. Do you believe they are barred in any way by the statute of frauds? No. And in our briefing, I think we conceded the point that the at least partial performance of the payment would take the oral contract out of being barred by the statute of frauds. What we do argue, which is kind of the second issue, is that the oral agreement can't have specific performance of an oral agreement that is exempted out of the statute of frauds. But we are not arguing that the entire claims are barred by the statute of frauds statute. Okay, so I'm not clear because obviously I didn't get that from your brief. I thought you were arguing that the statute of frauds somehow applied. So you're saying that the claims, there's only one claim, right? There's a breach of contract, count one, breach of oral contract. Count two was for specific performance of the agreement. That was for payment of the 132nd proceeds as well as some other relief, right? The way I understood their claim for specific performance was the assignment of the lease. Okay, so that's one issue that they wanted to have heard. The specific performance was for the assignment of the lease. Correct, and that's, we believe that's the second issue too, but it's not, specific performance isn't barred because of statute of frauds per se. The way I understood counsel's argument was that we argued all of the claims go away because of statute of frauds, which wasn't our argument. Our primary argument of why both claims are barred was the statute of limitations. And again, the parties are in agreement about the applicable standard that the statute of limitations begins to run when a party has the right to invoke the aid of the court. Both parties said that in their briefs. Also, there appears to be no dispute that the applicable statute of limitations is a five years time frame for an oral contract. And again, we contend there's no dispute as to the facts. The judge had asked a question about the timing, so I'd kind of like to give a little more specifics on the facts. The parties started negotiating, talking about this potential deal in the summer of 2008. In August of 2008, DuPont Oilfield provided a form operating agreement that would apply to their deal if they were able to consummate it. On September 17th, plaintiff tendered a check to defendant in the amount of $25,000. Eight days later is when defendant acquired the lease on September 25th. They recorded that lease in the recorder's office in St. Clair County on October 14th of 2008. And again, according to plaintiff's amended complaint, over the next few months, which we read to be October, November, December of 2008, there was constant communication of where's my assignment, where's my assignment. And what did your client say? Again, using plaintiff's complaint, it was that it's on its way, I'm getting to it, I'll get it to you. Again, we would submit that at the end of 2008, that plaintiff had sufficient knowledge of the facts to know they had the right to invoke the aid of the court. How would they have sufficient knowledge of that if your client, now their partner, is an oil contractor, says I'm getting it to you? How would they have knowledge? Well, I think there's two ways to look at that, that they hadn't received it. If they went to court and if they chose not to believe my client and said, you know what, I'm getting it in three months. Why would they choose to do that? Can't they rely on their partner? They can't stick their head in the sand. No, once they have reasonable information to inquire further, that's what the law says, to inquire further. I would say after three, and in this case, you can even go out six months. But your client can act fraudulently. Your client can breach its duty to the partner, can't it? Well, fraud is not part of this particular case. We're talking specifically about an oral agreement is what's at issue in this matter. Do you believe that the oral agreement was a valid oral agreement? Yes, at the time. And when the form contract or operating agreement was given to the other side, was there a description of the oil fields? It's attached as Exhibit B to the complaint, and I believe that is true, that it describes. They claim that there was a very specific description of what the oral agreement was about, right? Yes. But to take that argument further, if Jasper Oil, as they argue, they say, well, we didn't know there was a breach until he basically specifically said there was a breach in March of 2011.  One, that's really a conclusion of law that doesn't have to be accepted as true. We cite the Shaker and Associates, and even the Herbertage case, the plaintiff cites to makes that clear statement of law that conclusions of law don't have to be accepted as true. And two, if you take their argument to kind of its logical conclusion, under their argument, if Mr. Cole had just continually and always said it's on the way, then there was never a breach of the agreement. And I don't think that's the current state of Illinois law. And again, it kind of ignores the case law that there is a duty to inquire once they have sufficient information to be on notice there might be a problem. Again, yet another way to kind of look at the same issue is if Jasper Oil had filed suit in, say, January, February, March of 2009. Again, we're six months out from the tender of the check. If they had filed suit saying we've been waiting six months, we don't have it, we think he's in breach. If we'd have come into court on a motion to dismiss and say this isn't right or there is no controversy because, Judge, we're telling him we're going to get it, I don't think that would have been a successful motion to dismiss. And I think that just proves the plaintiff had the right to invoke the aid of the court prior to March of 2009. So the relief that your client asks for is what? To uphold the trial court's decision that both claims are barred by the statute of limitations and that the request for specific performance fails to state the claim is a matter of law. So your client keeps $25,000? That's correct, Your Honor. And is unjustly enriched? And, I mean, that's a reasonable thing to say. And if you look at the Foley Court, the Supreme Court of Illinois, they kind of address that issue that they, the very last few sentences of that Supreme Court decision says, even though we find some of the defendant's actions to be reprehensible, we have to follow the principle of law. And the statute of limitations is a very important public policy. You know, and I won't bore the court, I'm sure you all have heard the public policy reasons that why we need certainty in the law. And that's why we have statute of limitations for virtually every civil claim in virtually every jurisdiction, because it's a very important public policy. In theory, any application of the statute of limitations could potentially bar a meritorious claim. But our courts and our legislatures have decided that certainty in the law is an important public policy that is to be enforced and followed by the courts. So, again, we submit that the facts as pledged in the Second Amendment complaint support the trial court's finding that the statute of limitations, the five-year statute of limitations, were exceeded and that all claims by plaintiffs were time-barred. There was some talk about unjust enrichment. I think it's important to point out procedurally, plaintiffs initially brought a claim for unjust enrichment in their initial complaint. We filed a motion to dismiss that because it also is subject to a five-year statute of limitations. Court granted the motion with leave to amend. Plaintiffs never refiled their claim for unjust enrichment, which we submit at least leaves the implication they understood that that claim was also barred by the five-year statute of limitations. Well, the doctrine about just enrichment technically only exists if there's no valid contract. Right. So, your conclusion that they didn't refile it because they knew the statute of limitations had run? It doesn't square with the fact there was a valid contract. I mean, right? I think that was subject to interpretation. There's two interpretations. We can at least agree there's two interpretations. Okay. Regarding the second issue as to specific performance, and again, this issue only needs to be considered if you overturn the trial court's decision on the statute of limitations. Because if it's claimed by statute of limitations, they'll need to decide if it fails as a matter of law. And again, the argument here is that in an oral agreement for the conveyance of land, which a working interest in an oil and gas lease is, and again, I don't think there's any dispute between the parties as to that. For the plaintiff to be able to have specific performance, they need to show four elements as we set forth in our brief in the Schofield case that was decided by this court. And we contend they fail to meet two of those. In particular, we focused on the fact that plaintiff can be made whole by damages. If they can be made whole by damages, then they're not titled to specific performance. We cited three cases, the Durbin case, the Foley case, which were both decided by the Illinois Supreme Court, and the Schofield case, which was decided by the 5th District here. All of those are oral agreements for the conveyance of oil and gas interests, which we contend are directly on point. And each of those decided that specific performance of an oral agreement to convey oil and gas interests fail to state a claim as a matter of law. Jasper Oil in its brief really, in arguments today, makes no attempt that I can see to distinguish the Schofield case or the Foley case. They talk a little bit about Durbin, and then saying it's not, Durbin is distinguishable, well, distinguishable, excuse me, because Durbin was for an agreement to enter an agreement. We contend plaintiff's complaint sets forth the exact same situation. They attach this exhibit B, the operating agreement. They state over and over that that's the basis of their claim. When do we get our agreement? When do we get the signed operating agreement? So I think that isn't a distinguishable fact. And all three of those cases comport with our argument that you can't have specific performance on these type of cases. So again, if you do overturn the trial court and the statute of limitations, we submit for the separate reason cited in those three cases. You should uphold the trial court's ruling that there is no specific performance on this oral agreement. Thank you. Thank you very much, Mr. Sullivan. Mr. Gilstall, do you have rebuttals? Yes. Starting with the last person, Durbin particularly relied on the fact that the contract paid for the sale of land and not writing was clearly within the statute of frauds. And for that reason, no suit for its specific performance can be maintained. Unless the performance or some other reason is taken out of the statute of frauds. That is different than saying, as counsel tried to tell the court a moment ago, that you never can get specific performance for oil and gas sales. That was the lie Durbin decided on that particular issue on the statute of frauds, which, as we've already shown, there's a writing memo. We are outside of that statute. Schofield and Foley basically relied on Durbin. So there's really not much.  When we start hearing the arguments that my client could not stick his head in the sand, the justice pointed out there was a letter from Countrymark. That letter, again, was dated August 19th of 2009. Again, if at that juncture, Mr. Shields has put on sufficient notice that there was a violation or there was a breach, he would still have until August 19th of 2014 to file his complaint. So he filed much earlier than that. He filed on March 12th of 2014. He's still six months within the statute of limitations. So the argument that somehow my client stuck his head in the sand, my client did do some due diligence. He did do some work. It took a little bit of time, but he, in fact, discovered that he had a claim, and he filed within the proper, properly filed within the five-year period of the statute of limitations. And it is clear that the Hermitage case, Hermitage Corp. versus, I believe, Contractors Adjustment Company, again, as we stated in our reply brief, it's clear that the cause of action also does arise when an individual actually knows that they have a cause of action. If Mr. Shields, to hear the argument counsel made just one step further, if the day after the $25,000 was transferred, Mr. Shields filed a report and said, hey, this man's breached a complaint, I think he would have been tossed out of the museum because it was not the contemplation of the parties that the deed was immediately forthcoming. It was going to be acquired by a dupo and then it was going to be subsequently transferred. So I think it's clear that what we're looking at is, A, a question of fact where it's reasonable, and I think it's also clear that when we read the complaint, it does not establish as a matter of law that prior to March 12th of 2009, Mr. Shields was aware of the fact that there was a breach. I think that it's clear that he is within the proper period of time for the statute of limitations, and I believe the specific performance is absolutely appropriate given that, again, there was a writing. Thank you very much. All right, this matter will be taken under advisement and a disposition will be issued in due course. At this time, the court is not taking a recess.